UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **THOMAS HUTCHINSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| *vs.* | ) CAUSE NO. 1:12-cv-624-SEB-DKL |
| | ) |
| **CAROLYN W. COLVIN, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Thomas Hutchinson applied for disability insurance benefits, supplemental security income disability benefits, and a declaration of a period of disability under the Social Security Act. He alleged that he is disabled due to back and leg pain, and high blood pressure. (R. 166, 203.) He also alleged additional issues with depression, anxiety, chest pain, shortness of breath, obesity, and right-leg numbness. (R. 203-04.) The defendant Commissioner denied his application and Mr. Hutchinson filed this Cause for judicial review of that decision. The Honorable Sarah Evans Barker, district judge, referred the issues presented in this Cause to this magistrate judge for submission of a report and recommendation as to their disposition. *Order Referring Matter to Magistrate Judge* [dkt. 54]. This Report and Recommendation fulfills that referral.

### Standards of review and disability

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity

2

that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 USC § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related

physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory

guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

**Procedural background**

After Mr. Hutchinson's application was denied by the state agency on initial and reconsideration reviews, he requested and received a hearing before an ALJ. (R. 51-61, 36). Mr. Hutchinson testified at the hearing as did a vocational expert ("VE") called by the ALJ. Mr. Hutchinson was represented by his current counsel at the hearing. The ALJ denied his

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

application, (R. 18), and the Appeals Council denied his request for review, (R. 1). That rendered the ALJ's decision the one that the Court reviews.

At step one, the ALJ found that Mr. Hutchinson was not engaged in substantial gainful employment. At step two, he found that Mr. Hutchinson's severe impairments are disorders of the back (discogenic and degenerative) and obesity. At step three, the ALJ found that Mr. Hutchinson's conditions did not meet or medically equal any of the Listing of Impairments. For steps four and five the ALJ determined that Mr. Hutchinson had the RFC for "light" work with additional restrictions, the ones pertinent to this Cause being standing and/or walking is limited to 45 minutes at one time and to no more than 5 hours total during an 8-hour workday. At step four, he found that Mr. Hutchinson could not perform his past relevant work. At step five, the ALJ relied on the grids and the testimony of the VE in finding that Mr. Hutchinson is not disabled.

## Discussion

Mr. Hutchinson contends that the ALJ committed two errors.

**1. Violation of Social Security Ruling 00-4p.** The Social Security Administration incorporates into its disability determinations the vocational information compiled in the United States Department of Labor's *Dictionary of Occupational Titles*. Social Security Ruling ("S.S.R.") 00-4p requires an ALJ to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the

*Dictionary of Occupational Titles* (DOT) . . . ." As part of this obligation, the ruling requires, "[a]t the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." These obligations are mandatory and an "affirmative responsibility" imposed on ALJs. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). At the hearing in this case, the VE testified to three jobs existing in significant numbers in the national economy that he determined Mr. Hutchinson could perform according to his age, education, skills, and the RFC, with restrictions, provided by the ALJ. (R. 47-48.) While the ALJ asked the VE for *DOT* identification or catalog numbers for those jobs, he did not ask the VE about the consistency of his proffered jobs with the *DOT*. The ALJ did not otherwise identify, and therefore did not explain, any inconsistency. Mr. Hutchinson's counsel also did not inquire of the VE about conflicts with the *DOT* during his brief questioning. In his later decision, the ALJ wrote that, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (R. 30.) However, the ALJ did not explain how he made that determination.

Mr. Hutchinson argues that the ALJ committed reversible error by, first, failing to ask the VE, on the record, about consistency of his proffered jobs with the *DOT* and, second, failing to recognize and address consistencies that were apparent. He identifies two apparent inconsistencies: the amount of standing and/or walking that a job requires

7

**(1)** in total in an 8-hour workday and **(2)** at one time during the day. Work at the "light" level — the *DOT* and the Social Security regulations use the same definitions, 20 C.F.R. § 404.1567— requires "a good deal of walking," 20 C.F.R. § 1567.404(b), which the Commissioner has defined means "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," S.S.R. 83-10. The VE identified three jobs in response to the ALJ's "light" work hypothetical, but the ALJ had further restricted Mr. Hutchinson to no more than 5 hours in an 8-hour workday. Thus, according to Mr. Hutchinson, there was an apparent inconsistency between the six hours required for light work and the five-hour restriction found by the ALJ. The Commissioner responds that there is no apparent inconsistency because light work requires only "approximately" 6 hours of standing and/or walking and the ALJ's limit of 5 hours is "not substantially different from six hours . . . ." (*Defendant's Brief* [dkt. 22] at 5.)

Secondly, Mr. Hutchinson cobbles together from S.S.R. 83-12 and S.S.R. 96-9p a requirement of "prolonged" — which he contends means uninterrupted — standing and/or walking of 2 hours for light work, but the ALJ restricted him to no more than 45 minutes of standing and/or walking at a time. The Commissioner responds that there is no requirement under light work for uninterrupted standing and/or walking; all that is required is standing or walking "off and on" for a total of six hours total in a workday.

The Commissioner also argues that Mr. Hutchinson has forfeited his arguments because his counsel did not raise them at the hearing. Relying on the Court of Appeals'

8

decision in *Overman v. Astrue*, 546 F.3d 456 (7th Cir. 2008), and the non-precedential decision in *Zblewski v. Astrue*, No. 08-1755, 302 Fed. Appx. 488 (7th Cir., Dec. 15, 2008), the Commissioner argues that the ALJ was required to investigate and resolve only *apparent* conflicts and, because the VE's testimony was consistent with the *DOT* and the definition of light work, no inconsistency was apparent. The Court concludes that Mr. Hutchinson has not forfeited his arguments. The Court of Appeals for the Seventh Circuit has held that a plaintiff does not forfeit the argument that an ALJ failed in his first-step duty to ask a VE about *DOT* consistency because S.S.R. 00-4p imposes that requirement as an *affirmative* duty on ALJs. *Prochaska*, 454 F.3d at 735 ("Prochaska was not required to raise this issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ."). The cases on which the Commissioner relies show that the Court of Appeals has gone further: an applicant also does not "forfeit" his argument that an ALJ failed in his second-step duty to investigate and resolve inconsistencies. Rather, the inquiry is simply whether any conflict between a VE's proffered jobs and the *DOT* was apparent, because, as the Commissioner points out, an ALJ is obliged to address only *apparent* conflicts. *Overman*, 546 F.3d at 462-63. Conflicts can be apparent because an applicant points them out at a hearing or because they were "obvious enough that the ALJ should have picked up on them without any assistance . . . ." *Id.* at 463.

In this case, because the ALJ failed in his initial duty to ask the VE whether his proffered jobs were consistent with the *DOT*, Mr. Hutchinson did not forfeit his argument

9

of error. Although the ALJ wrote later that he "determined that the vocational expert's testimony is consistent with the information contained in the [*DOT*]," there is no indication in the Record that the ALJ directed a post-hearing inquiry to the VE to which Mr. Hutchinson had the opportunity to respond. The Court will not determine on its own that the ALJ's restriction of Mr. Hutchinson to 5 hours standing and/or walking is "not substantially different from" light work's requirement of 6 hours and, thus, not inconsistent. That determination depends on vocational expertise that the Court does not possess. Rather, as the court held in *Pochaska*, "[t]hat determination should have been made by the ALJ in the first instance, and his failure to do so should have been identified and corrected by the Appeals Council." *Prochaska*, 454 F.3d at 736.

The Court is less reticent to address whether it was apparent that the ALJ's restriction to 45 minutes of uninterrupted standing and/or walking conflicts with, what Mr. Hutchinson contends is, a 2-hour requirement of the same in the definition of light work because Mr. Hutchinson's stitching together of that requirement from patches of inferences from Rulings addressing other issues leaves the Court unconvinced at this stage that such a requirement actually exists. However, because the Commissioner's decision must be remanded for additional proceedings on the first two grounds, the Court will reserve judgment at this time and instruct the Commissioner to address this question on remand as well, now that the possibility of a conflict has been identified and is now apparent.

Therefore, the Court finds that the ALJ committed reversible error when he failed to inquire whether the jobs identified by the VE in response to the ALJ's hypothetical were consistent with the *Dictionary of Occupational Titles*. Now that two potential conflicts have been identified and are apparent, the application will be remanded and the Commissioner is instructed to **(1)** inquire, on the record, whether the VE's proffered jobs are consistent with the *DOT*; **(2)** investigate and resolve any inconsistency between the 5 hours of standing and/or walking to which the ALJ restricted Mr. Hutchinson and the approximately 6 hours of standing and/or walking that is required for light work; **(3)** investigate and resolve any inconsistency between the 45 minutes of uninterrupted standing and/or walking to which the ALJ restricted Mr. Hutchinson and the requirements of light work; and **(4)** investigate and resolve any other inconsistencies that the VE identifies in response to the inquiry. The Commissioner need not address any other inconsistencies that might be proposed by Mr. Hutchinson on remand.

**2. Improper evaluation of medical opinions.** Mr. Hutchinson argues that the ALJ failed to accord Dr. Ellis's medical opinion, (R. 387-88), controlling weight and failed to articulate his evaluation of, or the weight he accorded to, Dr. Poplin's opinion and report of his consultative examination, (R. 320-26). The Commissioner concedes that the ALJ mistakenly characterized Dr. Ellis's opinion as relating to matters reserved to the Commissioner but contends that he, nonetheless, provided proper reasons for finding that the opinion "is not supported by the objective medical evidence" and giving it "limited

11

weight." (R. 28.) The Commissioner correctly observes that Dr. Ellis neither provided nor pointed to "medically acceptable clinical and laboratory diagnostic techniques" or other "relevant evidence" in support of his opinion. 20 C.F.R. § 404.1527(c)(2) and (3). Indeed, Dr. Ellis' opinion consists of his selections on a multiple-choice ratings form listing various functional limitations with one question about degree of pain, (R. 387), to which he attached a one-paragraph letter providing a brief description of Mr. Hutchinson's medical condition but with no resulting functional limitations, (R. 388). The Commissioner also points to several items in the medical evidence that tend to contradict the severity of Mr. Hutchinson's condition and abilities as described by Dr. Ellis.

However, at most, what the Commissioner has done is provide reasons that the ALJ *could have* given for not according Dr. Ellis's opinion controlling weight, see, *e.g.*, 20 C.F.R. § 404.1527(c)(2),[2] and for giving it limited weight, see, *e.g.*, 20 C.F.R. § 404.1527(c)(3)[3] and (4).[4] But the Commissioners reasons are not the reasons that the ALJ himself gave. It is evident that the ALJ did not give Dr. Ellis's opinion "controlling weight or special significance" primarily because he wrongly construed the subject matter of his opinion to

---

[2] "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."

[3] "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."

[4] "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."

be reserved to the Commissioner, and the only reason he articulated for giving it residual "limited weight" is because it "is not supported by the objective medical evidence." The Commissioner concedes that the first evaluation is simply wrong and the Court finds that the second evaluation is simply conclusory. The ALJ does not identify any aspect of Dr. Ellis's opinion that is not supported by objective medical evidence and the Commissioner cannot fill the gap after-the-fact with his own list. On remand, the Commissioner must instruct the ALJ to undertake and articulate a proper evaluation of Dr. Ellis's opinion.

Mr. Hutchinson also argues that the ALJ failed to articulate his evaluation of Dr. Poplin's opinion in relation to the ALJ's RFC assessment. Mr. Hutchinson argues that Dr. Poplin's examination resulted in objective evidence showing significant abnormalities that are consistent with sedentary, but not light, work. The Commissioner responds, in essence, that the ALJ obviously discounted Dr. Poplin's opinion in favor of others' opinions and other evidence. While the adequacy of the ALJ's evaluation of Dr. Poplin's opinion presents a closer question than his evaluation of Dr. Ellis's, in light of the already reached conclusion that Mr. Hutchinson's application will be remanded for other reasons, the Court concludes that Dr. Poplin's opinion warrants a fuller articulation by the ALJ of his evaluation of it. The Court instructs the Commissioner to instruct the ALJ to provide that fuller articulation in relation to his RFC determination.

## Conclusion

For the reasons explained above, this magistrate judge recommends that the

Commissioner's decision denying Plaintiff's application for disability benefits and a period of disability be **REVERSED** and **REMANDED** for further proceedings as instructed above.

### Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses.  No replies will be allowed.**

**DONE this date:** 08/15/2013

*Denise LaRue* (signature)
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.